UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MENASHA CORPORATION and
NEENAH-MENASHA SEWERAGE COMMISSION,

        Plaintiffs,

  v.                                                                 Case No. 11-C-682

UNITED STATES DEPARTMENT OF JUSTICE,

        Defendant.

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This case arises under the Freedom of Information Act (FOIA), 5 U.S.C. § 522. Plaintiffs Menasha Corporation (Menasha) and Neenah-Menasha Sewerage Commission (NMSC) allege that the Defendant, the United States Department of Justice (DOJ), refused to provide records responsive to an administrative FOIA request (submitted to the DOJ on December 17, 2010). Presently before the Court is Defendant's motion for summary judgment which raises the question of whether lawyers at the DOJ who represent separate client agencies with adverse interests in the same litigation can share confidential information with each other without waiving attorney-client privilege, work product privilege, and the deliberative process privilege. The Court concludes that the answer is no, and therefore denies Defendant's motion for summary judgment and orders the requested information produced.

## BACKGROUND

On July 15, 2011, Plaintiffs filed this action under the FOIA alleging that the DOJ failed to provide records responsive to an administrative FOIA request submitted to DOJ on December 17, 2010.) (ECF No. 1.) The FOIA request at issue seeks documents from the DOJ's Environment and Natural Resources Division (ENRD) related to a proposed Consent Decree lodged with the Court on December 1, 2010, in the *United States v. NCR Corp., et al.* The Plaintiffs, Menasha and NMSC, are defendants in that Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA) enforcement action involving the cleanup of the Fox River. Menasha and NMSC have asserted counterclaims against the United States in that case, alleging they are entitled to recover response costs and damages from the United States based on the Army Corps of Engineers' (USACE) activities related to the Site and paper recycling activities by federal agencies.[1] USACE, as a potentially responsible party (PRP), seeks to minimize its liability through any available defenses, including whether the harm it caused is divisible from the total harm at a site. The Environmental Protection Agency (EPA) is an enforcer under CERCLA. It may seek joint and several liability against any PRP and should seek to impose the maximum liability against any PRP. The United States was also named as a defendant in a set of consolidated lawsuits filed by Appleton Papers Inc. and NCR Corporation in 2008 related to the Site. Menasha filed a third-party claim against the United States in that action.[2]

---

[1] *See United States and the State of Wisconsin v. NCR Corp., et al.*, Case No. 10-C-910 (E.D. Wis.), ECF Nos. 1, 30, 48, 58.

[2] *See Appleton Papers Inc. v. George A. Whiting Paper Co.*, Case No. 8-C-00016 (E.D. Wis.); *NCR Corp. v. Kimberly-Clark Corp.*, Case No. 08-C-00895 (E.D. Wis.).

ENRD is currently organized into nine litigating sections. Two of the nine sections are particularly relevant here: the Environmental Enforcement Section (EES) and the Environmental Defense Section (EDS). The EES is responsible for "bringing civil judicial actions under most federal laws enacted to protect public health and the environment from the adverse effects of pollution, including [CERCLA.]" (ECF No. 19 at 3.) The EDS represents the United States in civil litigation arising under the environmental laws. For instance, the EDS defends the United States against claims under CERCLA, it defends rules issued by the EPA, and it defends federal agencies accused of being in violation of pollution control statutes.

Generally, ENRD's Assistant Attorney General has the authority to approve settlements under CERCLA, but there are certain exceptions. 28 C.F.R. § 0.160(c). The Associate Attorney General must approve a settlement if: (1) the difference between the amount of the United States' claim and the amount of the settlement exceeds $2,000,000 or (2) the settlement amount being paid on behalf of the United States exceeds $2,000,000. *See* 28 C.F.R. §§ 0.160(a)(2), 0.161. EES and EDS are directly supervised by a Deputy Assistant Attorney General. Currently, and for the last five years, the same Deputy Assistant Attorney General supervised both EES and EDS.

On December 17, 2010, Attorney David Rabbino submitted a FOIA request to ENRD seeking the disclosure of documents and communications "received by ENRD from any party, including but not limited to the Settling Defendants, the Settling Federal Agencies or their respective consultants, regarding discharges from material from the Consolidated Disposal Facilities [and] all other information considered [by ENRD] in arriving at the proposed terms of the settlement." (ECF No. 1-1 at 2.) ENRD first tried to work with Attorney Rabbino to narrow the request. ENRD produced 3,648 documents within six weeks of the FOIA request. (ECF No. 11

3

¶ 14.) ENRD withheld approximately 1,300 documents "from a universe of almost 5,000 potentially responsive documents." (ECF No. 19 at 5; ECF No. 11 ¶ 14.) On November 1, 2011, the DOJ released 144 additional documents: eighty in full and sixty-four in redacted form.

Plaintiffs filed this action on July 15, 2011, and on October 28, 2011, ENRD filed an index of the withheld documents pursuant to *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), along with two explanatory declarations. (ECF Nos. 11–13.) The government's *Vaughn* Index described all withheld documents, including the source, recipient, subject matter and category of each document, as well as the basis for its withholding. The United States also submitted a fourteen page letter outlining its asserted factual and legal basis for each of the privileges asserted in the *Vaughn* Index. (ECF No. 10.)

In a November 4, 2011 letter to the Court and in a November 7, 2011 telephone status conference, Plaintiffs agreed to narrow the suit's focus to approximately 440 withheld documents.[3] (ECF No. 14.) Plaintiffs thus now challenge only those documents and communications exchanged between lawyers in the EES and lawyers in the EDS regarding the proposed Consent Decree. Many of these documents are also communications with other federal agencies, including the Environmental Protection Agency, the Army Corps of Engineers, the General Services Administration, and the Government Printing Office.

**STANDARD OF REVIEW**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Facts are

---

[3] These 440 documents are listed on a supplemental *Vaughn* Index. (ECF No. 19-1.)

construed in the light most favorable to the non-movant. *Poer v. Astrue*, 606 F.3d 433, 438–39 (7th Cir. 2010). The purpose of summary judgment is to "dispose of claims that have no factual support" before moving on to trial. *Vukadinovich v. Bd. Of School Trustees of N. Newman Sch. Corp.*, 278 F.3d 693, 699 (7th Cir. 2002). It is not regarded as a "disfavored procedural shortcut, but rather as an integral part of the Federal Rules . . . designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986)(internal quotations omitted). The burden of each party for a summary judgment motion depends on whether that party will bear the burden of proof at trial. If the party seeking summary judgment does not bear the burden of proof at trial, that party must only "identify[ ] those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. Then the burden shifts to the non-movant to "make a showing sufficient to establish the existence of an element essential to that party's case." *Id.* at 322.

FOIA "seeks to establish a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language." *NLRB v. Sears, Roebuck, & Co.*, 421 U.S. 132, 136 (quoting S. Rep No. 89-813, at 3 (1965)). In accordance with FOIA's "goal of broad disclosure, [the FOIA] exemptions have been consistently given a narrow compass." *Department of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001) (citation and internal quotation marks omitted). However, while narrowly construed, the exemptions "are intended to have meaningful reach and application." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989). Indeed, Congress recognized public disclosure is not always in the public interest. Rather, "FOIA represents a balance struck by Congress between the public's right to know and the government's legitimate interest in keeping certain information confidential." *Center for National Security Studies v. Department of Justice*, 331 F.3d 918, 925 (D.C. Cir. 2003) (citing *John Doe*

5

*Agency*, 493 U.S. at 152). FOIA was not intended as a supplement to or substitute for civil discovery. *See United States v. Weber Aircraft Corp.*, 465 U.S. 792, 801–802 (1984).

A FOIA requester must first exhaust administrative remedies and may then receive relief from a court if the agency improperly withheld agency records. *See* 5 U.S.C. § 552(a)(4)(B). The district court reviews these agency determinations *de novo*. 5 U.S.C. § 552(a)(4)(B); *Patterson v. IRS*, 56 F.3d 832, 836 (7th Cir. 1995); *Summers v. Department of Justice*, 140 F.3d 1077, 1080 (7th Cir. 1998). If the agency locates dispositive records, they must be produced unless the records (or portions of them) are protected from disclosure by one or more of the FOIA statute's exemptions. *See* 5 U.S.C. § 552(b). The United States bears the burden of proof to show by a preponderance of the evidence that a withheld document falls within one of the claimed exemptions. *See, e.g.*, *Enviro Tech Intern. Inc. v. U.S. E.P.A.*, 371 F.3d 370, 374 (7th Cir. 2004).

Most FOIA actions are resolved on motions for summary judgment. *See, e.g.*, *Becker v. IRS*, 34 F.3d 398, 402 n.11 (7th Cir. 1994) ("[P]rocedurally the issue of whether documents are exempt under FOIA is often brought before a district court by motion for summary judgment . . ."); *Miscavige v. IRS*, 2 F.3d 366, 369 (11th Cir. 1993) ("Generally, FOIA cases should be handled on motions for summary judgment, once the documents in issue are properly identified."); *Struth v. FBI*, 673 F. Supp. 949, 953 (E.D. Wis. 1987) ("Summary judgment is commonly used to adjudicate FOIA cases.").

## ANALYSIS

Exemption Five of the FOIA protects "inter-agency or intra-agency memorandums or letters which would not have been available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). The privileges incorporated into Exemption 5 are designed (1) to

promote the open communication necessary to render legal advice based on a full, accurate understanding of the relevant facts and (2) to inform properly the government's internal decision making process. *See, e.g.*, *Upjohn*, 449 U.S. at 389. Courts have construed this exemption to apply to documents normally privileged in the civil context. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975); *Martin v. Office of Special Counsel*, 819 F.2d 1181, 1185 (D.C. Cir. 1987). Exemption 7(A) protects from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A); *Juarez v. Dep't of Justice*, 518 F.3d 54, 58 (D.C.C. 2008).

Here, the United States is asserting three kinds of privileges in connection with these exemptions: attorney work product, attorney-client, and deliberative process. Attorney work product is typically privileged in the civil discovery context. *See Sears, Roebuck & Co.*, 421 U.S. at 154 (noting the work product rule "clearly applies to memoranda prepared by an attorney in contemplation of litigation which set forth the attorney's theory of the case and his litigation strategy."). The attorney work product exemption also includes factual information prepared by an attorney in anticipation of litigation. *Martin v. Office of Special Counsel*, 819 F.2d 1181, 1187 (D.C. Cir. 1987).

The Supreme Court has also afforded special protection to the attorney-client privilege in order "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice." *Upjohn Co. v. United States*, 449 US. 383, 389 (1981). Thus, "if a party demonstrates that attorney-client privilege applies, the privilege affords all communications between attorney and client

7

absolute and complete protection from disclosure." *In re Allen*, 106 F.3d 582, 600 (4th Cir. 1997). The objectives of the attorney-client privilege apply to governmental clients. "The privilege aids government entities and employees in obtaining legal advice founded on a complete and accurate factual picture." 1 RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 74, Comment b, pp. 573–574 (1998). Unless applicable law provides otherwise, the Government may invoke the attorney-client privilege in civil litigation to protect confidential communications between Government officials and Government attorneys. *Id.*, at 574 ("[G]overnmental agencies and employees enjoy the same privilege as nongovernmental counterparts").

Thirdly, according to the Defendant, many of the withheld documents are protected by the deliberative process privilege, which protects predecisional materials that are a part of the deliberative process. *See, e.g.*, *Maptoher v. DOJ*, 3 F.3d 1533, 1537 (D.C. Cir. 1993); *Vaughn v. Rosen*, 523 F.2d 1136, 1143–44 (D.C. Cir. 1975).

Plaintiffs do not disagree that the government, in the abstract, can be entitled to these privileges. Instead, Plaintiffs contend that the internal communications among the DOJ lawyers here are not privileged. Plaintiffs argue that disclosure of a privileged communication to a third party ordinarily waives the attorney-client privilege. *See United States v. Windfelder*, 790 F.2d 576, 579 (7th Cir. 1987); *In the Matter of Continental Illinois Securities Litigation*, 732 F.2d 1302, 1314 (7th Cir. 1984). Plaintiffs claim the DOJ lawyers at issue represent "separate client agencies with adverse interests in the same litigation." (ECF No. 20 at 1.) Furthermore, Plaintiffs claim Defendant's position ignores FOIA's purpose of promoting transparency and accountability and is contrary to CERCLA's mandate that a government PRP be treated the same as a private PRP.

The Court finds Plaintiffs' contentions persuasive. As discussed above, the EPA (in its enforcement capacity) and the USACE (as a PRP) are Executive Branch agencies with adverse

8

interests. Under CERCLA, the EPA may seek joint and several liability against any PRP and should seek to impose the maximum liability appropriate against any PRP. USACE's self-interest, however, is to minimize its liability. The interests of the EPA and USACE are thus adverse. Attorneys who represent parties with adverse interests waive attorney-client and work product privileges as to documents they willing share with their adversaries.

Defendant tries to avoid this conclusion by arguing the DOJ attorneys represent the interests of a single client, the United States of America. Defendant points to *United States v. Jicarilla Apache Nation*, in which the Supreme Court rejected a case-by-case approach to deciding whether a government lawyer's consideration of multiple interests might foreclose the government's assertion of a legal privilege with respect to its internal communications. 131 S.Ct. 2313, 2328 (2011). However, Plaintiffs convincingly argue that *Jicarilla* is readily distinguishable from the facts of this case. (ECF No. 20 at 8.) The Supreme Court in *Jicarilla* addressed whether the fiduciary exception to the attorney-client privilege applied to the general trust relationship between the United States and Indian tribes. 131 S.Ct. at 2318. *Jicarilla* balanced the administration and development of the natural resources on the Tribe's reservation and the Government's need to comply with other statutory duties. *Id.* at 2328. In other words, the scope of *Jicarilla* is very narrow and most applicable to the fiduciary context; it does not easily extend to an assessment of conflicting interests in this CERCLA litigation.

Plaintiffs instead point to *Modesto Irrigation District v. Gutierrez* in which the court rejected the Government's contention that multiple agencies of the federal government must be considered a single client for the purposes of the attorney-client privilege. No. 1:06-CV-00453, 2007 WL 763370, *1 (E.D. Cal., March 9, 2007). As *Modesto* notes, such a theory, "if taken to its logical

9

extreme, would protect communications between such adverse agencies simply because they are both part of the Executive Branch." *Id.* at 15. Admittedly, there is often no bright line when a government attorney is considering one federal interest as opposed to another. *See Nevada v. United States*, 463 U.S. 110, 135 n.15 (1983) ("[T]he Government stands in a different position than a private fiduciary where Congress has decreed that the Government must represent more than one interest."). *See also Jicarilla*, 131 S.Ct. at 2328–39 ("If the Government were required to identify the specific interests it considered in each communication, its ability to receive confidential legal advice would be substantially compromised. The Government will not always be able to predict what considerations qualify as a 'specific competing interest,' especially in advance of receiving counsel's advice. Forcing the Government to monitor all the considerations contained in each communication with counsel would render its attorney-client privilege 'little better than no privilege at all.'").

Nevertheless, the interests here are clearly adverse; there is no difficulty in discerning the specifically competing interests. EES is responsible for coordinating enforcement efforts whereas EDS is responsible for coordinating defense litigation strategies. Because the United States has competing interests in this case, it (appropriately) has separate counsel from EES and EDS independently representing the interests of their respective client agencies in the same manner as other adverse parties. Communications between those adverse parties therefore waive the privilege, as would communications between Plaintiffs Menasha and NMSC and any other PRP. *See also United States v. Mass. Institute of Tech.*, 129 F.3d 681, 686 (1st Cir. 1997) (standing for the general proposition that a private party waives its privilege as to all agencies of the government if it submits information to one particular government agency). The government cannot use its position to

compromise the integrity of the Consent Decree process. This would otherwise be contrary to CERCLA's express mandate that government PRPs be treated, both procedurally and substantively, like private PRPs. 42 U.S.C. § 9260(a)(1). USACE and the EPA are adverse and, thus, communications between them are not privileged.

## CONCLUSION

In sum, the agencies at issue have adverse interests; communications between the attorneys representing them therefore cannot be protected by attorney work product, attorney-client, or deliberative process privileges. Such a privilege is waived in light of the adversarial nature of the parties. Defendant's motion for summary judgment, ECF No. 18, is therefore DENIED.

**SO ORDERED** this   25th   day of January, 2012.

                                       s/ William C. Griesbach
                                       William C. Griesbach
                                       United States District Judge