UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MENASHA CORPORATION, et. al,

      Plaintiffs,

v.                                                    Case No. 11-C-682

UNITED STATES DEPARTMENT OF JUSTICE,

      Defendant.

**DECISION AND ORDER DENYING FEE REQUEST**

On January 26, 2012, this Court denied the United States' motion for summary judgment against Plaintiffs Menasha Corporation (Menasha) and Neenah-Menasha Sewerage Commission (NMSC) and ordered the United States Department of Justice (DOJ) to produce approximately 440 documents in response to Menasha and NMSC's request under the Freedom of Information Act (FOIA). (ECF No. 23.) FOIA allows courts to "assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i). This case is before me now on Plaintiffs' joint motion for attorneys' fees and costs. (ECF No. 24.) For the reasons discussed herein, Plaintiffs' motion will be denied.

**BACKGROUND**

On July 15, 2011, Plaintiffs filed this action under the FOIA alleging that the DOJ failed to provide records responsive to an administrative FOIA request submitted to DOJ on December 17,

2010. (ECF No. 1.) The FOIA request sought documents from the DOJ's Environment and Natural Resources Division (ENRD) related to a proposed Consent Decree lodged with the Court on December 1, 2010, in *United States v. NCR Corp., et al.* ENRD is currently organized into nine litigating sections, two of which are particularly relevant here: the Environmental Enforcement Section (EES) and the Environmental Defense Section (EDS). The EES is responsible for "bringing civil judicial actions under most federal laws enacted to protect public health and the environment from the adverse effects of pollution, including [the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA).]" (ECF No. 19 at 3.) The EDS represents the United States in civil litigation arising under the environmental laws. For instance, the EDS defends the United States against claims under CERCLA, it defends rules issued by the EPA, and it defends federal agencies accused of being in violation of pollution control statutes.

The Plaintiffs, Menasha and NMSC, are defendants in a CERCLA enforcement action involving the cleanup of the Fox River. Menasha and NMSC have asserted counterclaims against the United States in that case, alleging they are entitled to recover response costs and damages from the United States based on the Army Corps of Engineers' (USACE) activities related to the Site and paper recycling activities by federal agencies.[1] The Environmental Protection Agency (EPA) is an enforcer under CERCLA. It may seek joint and several liability against any potentially responsible party (PRP) and should seek to impose the maximum liability against any PRP. The United States was also named as a defendant in a set of consolidated lawsuits filed by Appleton Papers Inc. and

---

[1] *See United States and the State of Wisconsin v. NCR Corp., et al.*, Case No. 10-C-910 (E.D. Wis.), ECF Nos. 1, 30, 48, 58.

NCR Corporation in 2008 related to the Site. Menasha filed a third-party claim against the United States in that action.[2]

On December 17, 2010, about two weeks after the filing of the aforementioned Consent Decree, Attorney David Rabbino submitted (in his own name) a FOIA request to DOJ seeking the disclosure of documents and communications "received by ENRD from any party, including but not limited to the Settling Defendants, the Settling Federal Agencies or their respective consultants, regarding discharges of material from the Consolidated Disposal Facilities [and] all other information considered [by ENRD] in arriving at the proposed terms of the settlement." (ECF No. 1, Ex. A.) Within six weeks of this administrative FOIA request, the DOJ produced thousands of responsive documents consisting of almost 40,000 pages. However, it resisted producing hundreds of internal communications, claiming these documents were protected by multiple governmental privileges, including the attorney-client and work product privileges.

In the previous briefing on summary judgment in this case, Plaintiffs argued (and this Court agreed) that EES and EDS lawyers waived the government's privileges by communicating with each other on issues in which EES and EDS represented client agencies with separate (adversarial) interests in the *NCR* litigation. The Court rejected the government's position that internal communications between DOJ lawyers and their represented agencies do not waive privileges simply because they purport to have one single client, the United States. This Court instead concluded EES was responsible for coordinating enforcement efforts whereas EDS was responsible for coordinating defense litigation strategies. (ECF No. 23 at 10.) The Court held that

---

[2] *See Appleton Papers Inc. v. George A. Whiting Paper Co.*, Case No. 8-C-00016 (E.D. Wis.); *NCR Corp. v. Kimberly-Clark Corp.*, Case No. 08-C-00895 (E.D. Wis.).

3

communications between those adverse parties therefore waived the attorney-client and work product privileges, as would have communications between Plaintiffs Menasha and NMSC and any other PRP. (*Id.*) Plaintiffs' joint fee request followed this Order.

**LEGAL STANDARD**

A two-step analysis is required before a court awards fees. First, the court must determine whether the plaintiff is even eligible for a fee award by determining whether or not the plaintiff "substantially prevailed." *Stein v. Department of Justice*, 662 F.2d 1245, 1261 (7th Cir. 1981). This alone, however, does not establish an entitlement to fees. *Cox v. U.S. Department of Justice*, 601 F.2d 1 (D.C. Cir. 1979). Even if a FOIA plaintiff substantially prevails, the court must next determine whether the plaintiff is entitled to fees, as opposed to simply being eligible. *Stein*, 662 F.2d at 1262. This is an issue left to the sound discretion of the trial court. *Id.* In exercising its discretion, the court, at a minimum, should consider: "(1) the benefit to the public, if any, derive from the case; (2) the commercial benefit to the complainant; (3) the nature of the complainant's interest in the records sought; and (4) whether the government's withholding of the records had a reasonable basis in law." *Id.* (citations omitted); *Chesapeake Bay Found., Inc. v. United States Dep't of Agriculture*, 11 F.3d 211, 216 (D.C. Cir. 1993); *see also Fenster v. Brown*, 617 F.2d 740, 742 (D.C. Cir. 1979) (trial court must weigh facts of case against criteria of law on the award of attorney fees and then exercise its discretion in determining whether award is appropriate). No one factor is dispositive. *Davy v. CIA*, 550 F.3d 1155, 1159 (D.C. Cir. 2008).

Defendant agrees Plaintiffs are eligible, i.e. that they have substantially prevailed. (ECF No. 28 at 2.) But Defendant nonetheless contends Plaintiffs' request for attorney fees should be denied

4

for two reasons. Defendant first argues that neither Menasha nor NMSC has the standing to pursue this FOIA case. Secondly, even assuming Plaintiffs have standing, Defendants still argue the joint fee request should be denied on substantive grounds. (ECF No. 28 at 1–2.) I will address each of these arguments in turn.

## ANALYSIS

**1. STANDING**

The DOJ first asserts that because neither Menasha nor NMSC were named in the FOIA Request, neither can be deemed requesters under FOIA (and therefore neither has standing to seek attorney fees). Particularly, the government argues, Attorney David Rabbino submitted the administrative FOIA request to the DOJ under his own signature and did not indicate that he was so doing so as a representative of any particular entity. (ECF No. 6 at 6, n.1; *see also* ECF No. 1, Ex. A.) The government therefore contends that NMSC is barred from recovering fees because it did not file its own administrative FOIA claim and that Menasha is barred because the original FOIA request letter did not state Attorney Rabbino was representing any particular client at all. (ECF No. 6 at 6–7.)

The identity of the "requester" is required under FOIA so that the government has notice of the party or parties seeking information. When the FOIA Request here is considered along with the related correspondence among Menasha, Certain Defendants[3], and the DOJ itself, Menasha and NMSC's role in the FOIA Request is clear. (*See, e.g.*, Declaration of David A. Rabbino, March 19,

---

[3] Including Menasha, NMSC, P.H. Glatfelter Company, CBC Coating, US Paper Mills, WTM I Company, and the City of Appleton. *See* ECF No. 30 at 1, n 1.

5

2012 ¶¶ 3–8, 11–13; ECF No. 1-1, 1-2, 1-6.) These documents particularly note that the requests were submitted on behalf of Menasha and Certain Defendants. The DOJ (and especially the DOJ attorneys involved in the preparation of the response to the FOIA) were certainly on notice of Plaintiffs' involvement. Here, Menasha and the Certain Defendants provided no fewer than four separate writings identifying that the FOIA Request had been submitted on their collective behalf. (*Id.*; *see also* ECF No. 30 at 2–5.)

The cases cited by the DOJ in support of its argument are readily distinguishable. In *McDonnell v. United States*, a party that sought to enforce the United States' failure to respond properly to a FOIA request was deemed not to have standing because his name did not appear on the FOIA request and because to the extent his name had been included in the various requests in that case, the "passing reference to [him did] not sufficiently identify him with the person making the request to confer on him standing to challenge the denial of the request under the FOIA." 4 F.3d 1227, 1238 n.6 (3d Cir. 1993). Here, the identification of Menasha and the Certain Defendants were not merely "passing references." They were mentioned multiple times and given the underlying litigation and Consent Decree, this was more than sufficient to identify Menasha and the Certain Defendants with the person (Attorney Rabbino) that made the request "to confer standing on them to challenge the denial of the request under the FOIA." *Id.*

Furthermore, Defendant's position is a tenuous one at best that would have been more appropriately raised in its briefing on summary judgment — prior to the fee stage. If Defendant truly believed Plaintiffs lacked standing to bring the request, it should have asserted that in response to the request itself. How bizarre, otherwise, to concede Plaintiffs have "substantially prevailed" in accordance with *Stein* while contending Plaintiffs lacked standing to make the request in the first

6

Case 1:11-cv-00682-WCG   Filed 03/26/12   Page 6 of 14   Document 32

place. Based on the repeated notification that the FOIA Request had been submitted on behalf of Menasha and the Certain Defendants, Menasha and NMSC have standing to seek attorney fees as prevailing parties.

**2. ENTITLEMENT**

Defendant also contends Plaintiffs' motion should be denied on substantive grounds because the four factors courts should use in their fee discretion do not lie in Plaintiffs' favor. Defendant particularly argues factors two through four counsel against a fee award because, according to Defendants: (1) Menasha and NMSC seek to derive a pecuniary, litigation-related benefit from the FOIA request in this case; (2) Plaintiffs have brought their FOIA action as a vehicle to obtain discovery for use in opposing the proposed Consent Decree in the environmental enforcement case brought against them; and (3) DOJ had a reasonable basis in law to withhold a subset of privileged documents from its FOIA production. Plaintiffs, of course, disagree; they contend the balance of the four factors are in their favor. As no one factor is dispositive, all four factors will be discussed in detail below.

**A. Public Benefit**

Plaintiffs contend "[e]nsuring that the United States enforces and implements the provisions of CERCLA in a fair and consistent manner, particularly when resolving the liability of federal agencies, is a matter of public importance. Fair and consistent enforcement demonstrates to the public and to the regulated community that private parties will not be singled out to bear a larger share of liability and costs than they should be and that federal agencies will bear their fair share of

7

liability and costs." (ECF No. 25 at 2–3.) In other words, Plaintiffs argue, the disclosure of the documents will benefit the public by helping to ensure and demonstrate the Superfund program is being implemented in a fair and consistent manner. (*Id.* at 3.)

But as Defendant notes, in CERCLA cases, the public benefit is served when the well-established process for judicial review of proposed consent decrees is followed. Other courts have reached the same conclusion in similar circumstances. *See, e.g.*, *Matlack v. United States Environmental Agency*, 868 F. Supp. 627 (D. Del. 1994) (denying a FOIA plaintiff its fee request because it had a private incentive to pursue relief under FOIA in order to evaluate its potential liability for clean-up of the site); *Horsehead Industries, Inc. v. United States Environmental Protection Agency*, 999 F. Supp. 59 (D.D.C. 1998) (denying a fee request despite a finding that the EPA lacked a reasonable basis to withhold records because the primary purpose of the FOIA request was to seek EPA records related to plaintiff's designation as a PRP for a Superfund Site); *Solone v. Internal Revenue Service*, 830 F. Supp. 1141, 1143 (N.D. Ill. 1993) ("FOIA was enacted to provide information to the public and not to benefit private litigants"). And in general, "courts are disinclined to award fees and costs under FOIA where the benefit to the public is merely incidental or secondary to the private commercial interest of the plaintiff." *Whalen v. Internal Revenue Service*, 1993 WL 532506 at *5 (N.D. Ill. Dec. 20, 1993).

Here, there is little suggestion that any person or entity beyond the *NCR* litigants have an actual "public" interest in these specific communications, or that the disclosure will further the central purpose of the Act, which is to assist citizenry in making informed choices so vital to "the maintenance of a popular form of government." *Matlack*, 868 F.2d at 632. Additionally, the likelihood that these particular internal DOJ communications and memoranda will be disseminated

beyond the *NCR* litigation remains entirely speculative. *See Horsehead*, 999 F. Supp. at 69 (finding only a speculative possibility that the requested Site data would actually be disseminated to the public). I therefore conclude any asserted public benefit resulting from the release of the requested records is minimal (and secondary to Plaintiffs' own private interests in the records, as discussed below). This factor thus does not meaningfully support Plaintiffs' request for costs and fees.

**B. Commercial Benefit to the Plaintiffs and the Nature of the Plaintiffs' Interest**

Two of the *Stein* criteria — the commercial benefit to the plaintiff and the nature of the plaintiff's interest in the requested records — are closely related and will be discussed together here. Plaintiffs assert they will not derive a commercial benefit or profit from the disclosure of the information. (ECF No. 25 at 3.) At most, they claim, they will "appropriately bear a smaller share of potential liability for cleanup costs if the information demonstrates that the Settling Federal Agencies' share should be larger than provided for in the proposed consent decree." (ECF No. 25 at 3.)

But while perhaps not best framed as a *commercial* interest, Menasha and NMSC both had a strong private incentive to pursue this FOIA action as a means to secure discovery in the related *NCR* lawsuit and to limit their liability for their contributions to PCB pollution in the Fox River. Courts have found that the use of FOIA as a substitute for discovery constitutes a private, non-compensable interest. *See, e.g.*, *Stein*, 662 F.2d at 1263 (noting plaintiff "intended to use the information sought in the FOIA action in another lawsuit for which he was seeking damages"); *Nationwide Building Maintenance, Inc. v. Sampson*, 559 F.2d 704, 712 (D.C. Cir. 1977) (stating a court ordinarily will not award fees if FOIA was used as a substitute for discovery in private

9

litigation with the government); *Ellis v. United States*, 941 F. Supp. 1068, 1079 (D. Utah 1996) (collecting cases holding that a fee award is often denied where a FOIA case is used as a substitute for civil discovery). Had Plaintiffs here pursued the successful disclosure of the requested documents by means of a *discovery* request in the *NCR* litigation, there would have been no basis for an award of the fees and costs they now seek, absent a viable motion for sanctions.

A similar scenario confronted the court in *Matlack*, in which the EPA filed an administrative enforcement action naming Matlack, Inc. as a PRP for the cleanup of a Superfund Site. 868 F. Supp. at 627. Matlack submitted several FOIA requests to the EPA, seeking records of its own involvement at the Site and when the EPA failed to produce any responsive records, Matlack filed suit under FOIA. *Id.* at 629. Shortly after the filing, the EPA advised that it did have several responsive records, which it subsequently released with redactions. *Id.* Matlack then filed a motion for fees and costs under FOIA. The court determined Matlack was eligible for fees as a substantially prevailing party but nonetheless denied the fee request in accordance with the *Stein* framework. In doing so, the court stressed that Matlack had a private incentive to pursue relief under FOIA in order to evaluate its potential liability for the clean-up of the Site:

> Here Matlack's underlying incentive to engage in this FOIA litigation was to evaluate the possibility of avoiding liability for the clean-up of the Site. While Matlack certainly did not have a commercial interest in the sense of soliciting business with the information obtained, its private interest in fighting its designation as a PRP and the resulting liability was a sufficient incentive to institute this FOIA litigation regardless of the attorney's fees provision.

*Id.* at 632; *see also Horsehead*, 999 F. Supp. at 59. Likewise, Plaintiffs' interests in this case were pecuniary (if not strictly commercial) and even absent an award of fees and costs Plaintiffs had more than sufficient incentive to pursue disclosure of the DOJ documents at issue in this case.

10

Plaintiffs attempt to distinguish their case from *Matlack* and *Horsehead* by arguing that in both of those cases the FOIA requester was seeking information related to its *own* liability at a particular Superfund site. (ECF No. 30 at 10.) But Plaintiffs attempt to narrow the issue too far. The fact that Plaintiffs were not requesting information pertaining to their own liability does not mean they did not have private interests in the information. As discussed above, Plaintiffs' interest in the information was still for its own private use in the *NCR* litigation and accordingly the *Matlack* and *Horsehead* cases have precedential value. Hence the nature of Plaintiffs' interest weighs against a fee award in this case.

**C. The Reasonableness of the Agency's Withholding**

The final *Stein* factor emphasizes the deterrent and punitive function of the statute, as it assesses whether the government had a *reasonable* basis in law to withhold the requested records. *Brainerd v. Department of the Navy*, 1988 WL 37829 at *2 (N.D. Ill. Apr. 21, 1988)(emphasis added). This factor is designed to "weed out those cases in which the government was recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior." *Pinson v. Lappin*, 806 F. Supp. 2d 230, 237 (D.C. Cir. 2011). Implicit in the question "is a determination of whether the government sought to avoid embarrassment or frustrate the plaintiff through unnecessary delay." *Brainerd*, 1988 WL 37829 at *2.

The government contends that its position, while ultimately not convincing to this Court, had a colorable basis in law. (ECF No. 28 at 15.) It notes Plaintiffs never seriously challenged the assertion that the attorney-client and work product privileges would otherwise protect the requested records from public disclosure. *See* ECF No. 23 at 8 (noting Plaintiffs "do not disagree that the

government, in the abstract, can be entitled to these privileges"). The case instead presented the issue of whether the DOJ's representation of potentially adverse agency interests in the *NCR* case, combined with the exchange of information within sections of ENRD about those interests, waived the DOJ's right to assert applicable governmental privileges.

While this Court did not agree with the government's interpretation of precedent, and indeed specifically ruled the DOJ was not justified in withholding the requested documents, given the lack of case law on point, I cannot conclude the government's withholding was entirely unreasonable or without basis. As discussed in the Order, the facts of this case are certainly readily distinguishable from *United States v. Jicarilla Apache Nation*, 131 S.Ct. 2313 (2011), upon which Defendant tried to rely. The scope of *Jicarilla* is very narrow and most applicable to the fiduciary context; it does not easily extend to an assessment of conflicting interests in this CERCLA litigation. Instead, this Court was persuaded by the reasoning in *Modesto Irrigation District v. Gutierrez*, in which the court rejected the Government's contention that multiple agencies of the federal government must be considered a single client for the purposes of the attorney-client privilege. No. 1:06-CV-00453, 2007 WL 763370, *1 (E.D. Cal., March 9, 2007). But while the reasoning of *Modesto* is more applicable (and the *principles* of attorney-client and work product privilege underlying Modesto), Defendant is correct in stressing that the issues presented in its underlying case were somewhat novel. Therefore, while I cannot conclude Defendant was correct in withholding the documents, I also cannot say Defendant's position was *unreasonable*, either.

Finally, there is no evidence that the United States acted in bad faith or with an intent to frustrate Plaintiffs or avoid embarrassment. Within six weeks of the administrative FOIA request, DOJ produced thousands of responsive documents consisting of almost 40,000 pages. The DOJ

12

also explained its basis for withholding the debated documents and sought to work with Attorney Rabbino to narrow the scope of the request. And the United States suggested the final hearing on approval of the Consent Decree in *NCR* be postponed until a final decision could be reached on the FOIA disclosure issue underlying this case.

**D. Category of FOIA Plaintiffs**

Lastly, Defendant argues Plaintiffs are "not within the category of FOIA plaintiffs for whom an award of fees is appropriate." (ECF No. 28 at 8.) According to the Defendant, the criteria set forth in *Stein* reflect a Congressional policy of fee awards to encourage the "average person" (who would ordinarily find the barriers of court costs and attorneys' fees insurmountable) to pursue legitimate FOIA actions. *Stein*, 662 F.2d at 1262; *Cueno v. Rumsfeld*, 553 F.2d 1360, 1363–64 (D.C. Cir. 1977). Defendant argues that as Menasha and NMSC are, respectively, a private corporation and a public municipality, they do not fit into the categories of claimants this FOIA provision was intended to benefit.

But the plain language of FOIA and its legislative history confirm no class of plaintiffs is automatically excluded from recovering attorneys' fees and indeed the Seventh Circuit has specifically cautioned *against* imposing a categorical rule excluding such a class. *See Stein v. U.S. Dep't of Justice*, 662 F.2d 1245, 1263 n.12 (7th Cir. 1981). Nothing in FOIA's language or structure indicates that a corporation or municipality should *per se* be barred from using this provision. *Accord* 5 U.S.C. § 552(a)(3)(A) (providing that documents shall be made available to "any person") and 5 U.S.C. § 551(2) (defining a "person" to include "an individual, partnership, corporation, association, or public or private organization"). *See also Chicago Tribune Co. v. U.S*

13

*Dept. of Health & Human Services*, 70 F. Supp. 2d 832, 837 (N.D. Ill. 1998) (noting that simply because a plaintiff "is a large, financially strong entity" does not mean it should be automatically barred from recovering its attorneys' fees). Menasha and NMSC's structures therefore do not exclude them from recovering fees.

## CONCLUSION

Plaintiffs' strongest argument for its entitlement to fees is based on the reasonableness of the government's withholding of the documents, and even on this factor I cannot conclude the government was so unreasonable as to merit an award of fees. Additionally, this factor alone is not dispositive and certainly does not outweigh the bulk of the other *Stein* factors, all of which favor the government in this case. Accordingly, while I concede Plaintiffs are eligible for an award of attorneys' fees and costs, I do not, in the exercise of my discretion, conclude they are entitled to said fees. Plaintiffs' interests were essentially private and the request does not greatly serve any public interest. Accordingly, Plaintiffs' joint motion for fees (ECF No. 24) is **DENIED**.

Dated this   26th   day of March, 2012.

 s/ William C. Griesbach
William C. Griesbach
United States District Judge